McKlNNEY, ■ J.,
delivered the opinion of the Court.
This was an action on the case to recover damages for the alleged conversion of a slave, hired by the plaintiff to the defendant for twelve months.
The declaration contains counts in trover and case. Upon the issue of not guilty, the jury found for the defendant; and, a new trial being refused, the plaintiff appealed in' error.
The defendant kept a public hotel, and the slave was hired to him on the 10th of March, 1856, upon an express agreement that he was to be employed as a servant in the hotel. About the 1st of May, the defendant sub-hired the boy to the Messrs. Cowan, to work in a brickyard — a sort of employment, which the defendant was *53 informed, at the time of hiring, the plaintiff would not suffer him to be engaged in. In the month of June, while at work in the brick-yard, the boy was taken ill with a violent dysentery, of which he died in a few days. A physician was called in by Cowan, to visit the boy. The physician, soon afterwards, “saw the plaintiff and suggested to her that she had better have the boy brought to her house, where she could have him attended,” and he was accordingly taken to her house from Cowan’s, where he died in a short time after his removal. The physician proves that the boy was well attended to at Cowan’s; but it was his opinion that he would do better with the plaintiff; and it was at his (the physician’s) suggestion the negro was brought there.
The principal question on the trial, was, whether or not the act of the plaintiff, in receiving back the slave, under the circumstances, was a waiver of the conversion. Upon this point, his honor, the Circuit Judge, instructed the jury, that, “although the defendant was guilty of a wrongful conversion of the slave, and liable to be sued in trover for his value; still, if the plaintiff received the negro back into her possession, and treated him as her property, before his death, that it was a waiver of her right to sue in trover, for the conversion.”
This instruction, in the general and unqualified terms in which it is stated; is, we think, exceptionable.
The question of waiver, is mainly a question of intention. The mere isolated act of receiving back the slave, is, in itself, equivocal. From' this simple fact, it cannot be assumed, as a conclusion of law, that the plaintiff, in the case before us, waived the tortious conversion of the slave. In this lies the error of the *54 instruction; for the Court does assume, as a matter of law, that, upon the facts proved, there was an absolute waiver of the tort.
Whether or not the reception of the slave, under the circumstances of this particular case, amounted to a waiver of the conversion, depends upon the intention or motive which prompted the act. And the motive or intention of the act in this case, as in most other instances, is matter of inference, to be .deduced with more or less certainty from the external and visible acts and conduct of the party; and all the accompanying circumstances of the particular transaction. If the owner, with knowledge of the facts which, in law, constitute the conversion, take back the slave into his possession as owner, (either at the expiration of the term of hiring, or before,) and as if the tort had not been committed; this will be evidence of a waiver of the conversion; and being once waived, the right to sue in trover, for the tort, is gone forever. This is the doctrine of the case of Bell v. Cummings, 3 Sneed, 275. Which, on review, we fully approve. It must be clearly established, however, that the party had full knowledge of his rights, in respect to the matter of which the waiver is predicated; for, if ignorant thereof, of course no intention to waive anything can be implied. But if, as is assumed for the plaintiff to be the fact in the present case, the slave was received back, not with any intention to waive the tort, or to forego any legal rights resulting therefrom, but purely from motives and feelings of humanity towards the slave, or in obedience to the wishes of the physician, or from considerations of personal kindness towards the new owner of the slave; or *55 other sucb like motive; then, the simple act of taking back the slave, under such circumstances, would not, of itself, be sufficient evidence of a waiver of the conversion. And it may be observed, that the question, what amounts to a waiver, is, in all cases, a mixed question of law and fact, to be determined by the jury, under proper instructions from the Court.
But, though the technical conversion be waived, impliedly; still, the same result, in favor of the owner, may, frequently, be substantially attained on the count in case. The only material difference between trover and case, is, in respect to the rule of damages, peculiar to each action. In trover, upon the fact of conversion alone, the value of the property is recovferable as a matter of course; whereas, in case, the damages are measured by the nature and extent of the injury, and the value, or a less amount, may be allowed by the jury, according to the intrinsic merits of each particular case.
It results, from this view of the law applicable to the ease, that the instruction to the jury was erroneous. The Court likewise erred in not rejecting the statement of Cowan, derived from his negroes, in regard to the slave Nathan having been at Tucker’s on the Sunday before he was taken sick. This was excepted to when stated; and the Court, instead of passing it silently by, should have excluded it from the jury.
Judgment reversed.